## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES TRUSTEE,<br><br>        Plaintiff,<br><br>   v.<br><br>THOMAS MCAVITY, and<br>NORTHWEST DEBT RELIEF LAW FIRM,<br><br>        Defendants. | Misc. P. No.<br><br><br>UNITED STATES TRUSTEE'S COMPLAINT FOR DISGORGEMENT, SANCTIONS AND INJUNCTION AGAINST THOMAS MCAVITY AND NORTHWEST DEBT RELIEF LAW FIRM |

The Acting United States Trustee, by and through his undersigned counsel, files this complaint for disgorgement and sanctions against Thomas McAvity ("McAvity") doing business as Northwest Debt Relief Law Firm ("NWDR") (collectively "Defendants") for violations of 11 U.S.C. §§ 105, 328, 526, 528, and 707, and of Federal Rules of Bankruptcy Procedure 2016 and 2017 and in support thereof respectfully represents as follows:

### I.  PARTIES

1.      The Plaintiff is the Acting United States Trustee for Region 18.

2.      Thomas McAvity is an individual licensed to practice law in the state of Washington, before the United States District Court for the Western District of Washington, and before the United States Bankruptcy Court for the Western District of Washington, who is doing business as, and is the principal member of, Northwest Debt Relief Law Firm.

3.      Northwest Debt Relief Law Firm is McAvity's assumed business name, which upon information and belief, is not registered as a business entity authorized to conduct business in either Washington or Oregon.

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA  98101-1271
206-553-2000, 206-553-2566 (fax)

## II. JURISDICTION

4.      This complaint is filed pursuant to 11 U.S.C. §§ 105(a), 329, 526, 528, and 707, and Federal Rules of Bankruptcy Procedure 2016 and 2017, and the Court's inherent authority.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409(a). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

6.      The United States Trustee consents to adjudication and entry of final orders and judgments by the Bankruptcy Court for any and all matters arising in, or relating to, this adversary proceeding.

7.      The Court also has core jurisdiction over this matter under its inherent authority to "control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO Inc.*, 501 U.S. 32, 11 S. Ct. 2123 (1991).

8.      The United States Trustee has standing to seek relief in this matter as a party in interest in the bankruptcy cases described herein pursuant to 11 U.S.C. §§ 105, 307, 329, 526, and Federal Rules of Bankruptcy Procedure 2016 and 2017. The Acting United States Trustee has standing to seek the appropriate remedies against attorneys who appear before the Court pursuant to 11 U.S.C. §§ 105(a) and 329.

## III. FACTS

9.      McAvity operates a consumer bankruptcy practice in both Washington State and Oregon.

10.     McAvity's primary office in Washington State is located in Vancouver, Washington.

11.     McAvity qualifies as a debt relief agency as defined by 11 U.S.C. § 101(12A).

12.     McAvity is the managing attorney for NWDR.

13.     NWDR qualifies as a debt relief agency as defined by 11 U.S.C. § 101(12A).

14.     Defendants have failed to comply with their obligations to clearly and conspicuously identify attorney's fees to be paid and work to be provided for those fees that are charged as required by 11 U.S.C. §§ 329, 526 and 528 and by Federal Rules of Bankruptcy Procedure 2016 and 2017.

Complaint - 2

15.     As established in the cases identified herein, Defendants have engaged in a pattern and practice of misleading debtors as to the attorney's fees they were being charged, the necessity of work related to those fees, and created falsely bifurcated fee agreements.  Defendants' websites similarly failed to provide proper disclosures.

16.     Defendant have violated 11 U.S.C. §§ 329(b); 526(a)(1)(2)&(3); 528(a)&(b); 707(b)(4)(C); and Federal Rule of Bankruptcy Procedure 2016(b) through use of Pre-Petition Agreements, Post-Petition Agreements, false or misleading Rule 2016(b) statements and misleading Websites (capitalized terms defined herein).    All but one of the debtors in the Cases discussed below testified at their Section 341 meeting of creditors that they did not understand they were not obligated to pay fees under the Post-Petition Fee Agreements.

17.     Therefore, the United States Trustee seeks avoidance and cancellation of the fee agreements in each of the cases cited herein; disgorgement of the fees paid in all cases cited herein; injunctive relief, and sanctions and civil penalties against Defendants.

## A. **THE PRE-PETITION FEE AGREEMENTS**

### A.1.    **In re Ulibarri**

18.     The Defendants filed a petition for relief under Title 11, chapter 7, of the United States Code for debtor Pablo Ulibarri ("Ulibarri"), under case number 20-40048-MJH, on January 8, 2020 (the "Ulibarri Case").

19.     Ulibarri is an assisted person as defined by 11 U.S.C. § 101(3).

20.     Pablo Ulibarri signed a pre-petition fee agreement with the Defendants on or about January 6, 2020 (the "Ulibarri Pre-Petition Agreement").

21.     Pursuant to the terms of the Ulibarri Pre-Petition Agreement, Ulibarri was to pay $400.00 prior to the filing of his case, of which $300.00 would go towards attorney's fees and $100.00 towards the court filing fee.

22.     Pursuant to the terms of the Ulibarri Pre-Petition Agreement, Ulibarri could agree to pay post-filing fees for post-filing representation in the amount of $1,680.00, which included the remaining $235.00 court filing fee.

Complaint - 3

23.     Immediately after the language in the above paragraph the Ulibarri Pre-Petition Fee Agreement contained a parenthetical which stated "(12 x $142.80 which includes a 2% processing fee)".

24.     12 x $142.80 equals $1,713.60.

25.     Pursuant to the terms of the sample post-petition agreement attached to the Ulibarri Pre-Petition Agreement, Ulibarri was responsible for paying the post-petition filing fee if he retained Defendants to represent him post-petition.

26.     Pursuant to paragraph "A" of the Ulibarri Pre-Petition Fee Agreement the remaining filing fee would be paid by NWDR if he retained Defendants to represent him post-petition.

27.     The fees and charges in the Ulibarri Pre-Petition Agreement are not clearly described and conspicuous.

28.     The Rule 2016(b) disclosure in the Ulibarri Case indicates that Ulibarri agreed to pay $1,745.00 for the filing of his chapter 7 case.

29.     The Rule 2016(b) disclosure in the Ulibarri Case indicates that he paid Defendants $400.00 prior to the filing of the case, with a balance due of $1,345.00.

   **A.2.     In Re: Ross**

30.     The Defendants filed a petition for relief under Title 11, chapter 7 of the United States Code for debtor April Ross ("Ross"), under case number 20-40064-MJH, on January 9, 2020 (the "Ross Case").

31.     Ross is an assisted person as defined by 11 U.S.C. § 101(3).

32.     Ross signed a pre-petition fee agreement with the Defendants on or about January 7, 2020 (the "Ross Pre-Petition Agreement").

33.     Pursuant to the terms of the Ross Pre-Petition Agreement, Ross was to pay $400.00 prior to the filing of her case, of which $300.00 would go towards attorney's fees and $100.00 towards the court filing fee.

34.     Pursuant to the terms of the Ross Pre-Petition Agreement, Ross could agree to pay post-filing fees for post-filing representation in the amount of $1,680.00 which included the remaining $235.00 court filing fee.

Complaint - 4

35.     Immediately after the language in the above paragraph the Ross Pre-Petition Fee Agreement contained a parenthetical which stated "(12 x $142.80 which includes a 2% processing fee)".

36.     12 x $142.80 equals $1,713.60.

37.     Pursuant to the terms of the sample post-petition agreement attached to the Ross Pre-Petition Agreement, Ross was responsible for paying the post-petition filing fee if she retained Defendants to represent her post-petition.

38.     Pursuant to paragraph "A" of the Ross Pre-Petition Fee Agreement, the remaining filing fee would be paid by NWDR if she retained Defendants to represent her post-petition.

39.     The fees and charges in the Ross Pre-Petition Agreement are not clearly described and conspicuous.

40.     The Rule 2016(b) disclosure in the Ross Case indicates that Ross agreed to pay $1,745.00 for the filing of her chapter 7 case.

41.     The Rule 2016(b) disclosure in the Ross Case indicates that she paid Defendants $367.00 prior to the filing of the case, with a balance due of $1,378.00.

### A.3.     In re Atalig

42.     The Defendants filed a petition for relief under Title 11, chapter 7, of the United States Code for debtor Jonathan Atalig ("Atalig"), under case number 20-40145-MJH on January 17, 2020 (the "Atalig Case").

43.     Atalig is an assisted person as defined by 11 U.S.C. § 101(3).

44.     Atalig signed a pre-petition fee agreement with the Defendants on or about January 9, 2020 (the "Atalig Pre-Petition Agreement").

45.     Pursuant to the terms of the Atalig Pre-Petition Agreement, Atalig was to pay $400.00 prior to the filing of his case, of which $300.00 would go towards attorney's fees and $100.00 towards the court filing fee.

46.     Pursuant to the terms of the Atalig Pre-Petition Agreement, Atalig could agree to pay post-filing fees for post-filing representation, which would be "$1680 + $235 court filing fee for a total of $2315.00."

Complaint - 5

47.     The fees and charges in the Atalig Pre-Petition Agreement are not clearly described and conspicuous

48.     $1,680.00 plus $235.00 equals $1,915.00.

49.     The Rule 2016(b) disclosure in the Atalig Case indicates that Atalig agreed to pay $1,745.00 for the filing of his chapter 7 case.

50.     The Rule 2016(b) disclosure in the Atalig Case indicates that he paid Defendants $367.00 prior to the filing of the case, with a balance due of $1,378.00

**A.4.    In re Carey**

51.     The Defendants filed a petition for relief under Title 11, chapter 7, of the United States Code for debtor Lori Carey ("Carey"), under case number 19-14667-MLB, on December 27, 2019 (the "Carey Case").

52.     Carey is an assisted person as defined by 11 U.S.C. § 101(3).

53.     Defendants did not execute a written contract for bankruptcy services with Carey within five days of first providing her with bankruptcy assistance services.

54.     Defendants did not execute a written contract for bankruptcy services with Carey prior to her petition being filed with the Court.

55.     Defendants did not provide Carey with a written agreement that clearly and conspicuously explained the fees to be charged or the services to be provided prior to filing the petition.

56.     The Rule 2016(b) disclosure in the Carey Case indicates that Carey agreed to pay $1,745.00 for the filing of her chapter 7 case.

57.     The Rule 2016(b) disclosure in the Carey Case indicates that she paid Defendants $400.00 prior to the filing of the case, with a balance due of $1,345.00.

**A.5.    In re Zimmerman**

58.     The Defendants filed a petition for relief under Title 11, chapter 7, of the United States Code for debtors Jeffrey and Misty Zimmerman (the "Zimmermans"), under case number 20-10082-CMA on January 10, 2020 (the "Zimmerman Case").

59.     The Zimmermans are assisted persons as defined by 11 U.S.C. § 101(3).

Complaint - 6

60.     Misty Zimmerman signed a pre-petition agreement for representation in a chapter 13 bankruptcy proceeding on March 14, 2018, (the "Zimmerman Pre-Petition Agreement").

61.     Jeffrey Zimmerman did not sign the Zimmerman Pre-Petition Agreement.

62.     Defendants did not execute a written contract for bankruptcy services in chapter 7 with either Misty Zimmerman or Jeffrey Zimmerman prior to the chapter 7 petition being filed with the Court.

63.     Defendants did not provide Misty Zimmerman or Jeffrey Zimmerman with a written agreement that clearly and conspicuously explained the fees to be charged or the services to be provided in chapter 7 prior to filing the petition.

64.     The Rule 2016(b) disclosure in the Zimmerman Case indicates that the Zimmermans agreed to pay $1,712.00 for the filing of their chapter 7 case.

65.     The Rule 2016(b) disclosure in the Zimmerman Case indicates that they paid Defendants $23.00 prior to the filing of the case, with a balance due of $1,689.00.

66.     The Carey Case, Ulibarri Case, Ross Case, Atalig Case, and Zimmerman Case, shall collectively be known as the "Cases".[1]

B.  **THE POST-PETITION FEE AGREEMENTS**

    **B.1**     **In re Ulibarri**

67.     The Ulibarri case was filed January 8, 2020.

68.     Ulibarri signed a chapter 7 post-petition fee agreement with the Defendants on January 14, 2020 (the "Ulibarri Post-Petition Agreement").

69.     The balance of Ulibarri's schedules was filed on January 20, 2020.

70.     The first section 341 meeting of creditors in the Ulibarri Case was held on February 12, 2020.

---

[1] The United States Trustee believes there may be additional cases involving the conduct alleged in this complaint and reserves the right to supplement the complaint with any additional facts obtained through discovery and request additional relief.

Complaint - 7

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA  98101-1271
206-553-2000, 206-553-2566 (fax)

71.     The Ulibarri Post-Petition Agreement indicates that post-petition attorney's fees would be $1,378.00, which "includes the court filing fee;" however, Ulibarri agreed to pay $145.60 for 12 months, for total payments of $1,747.20.

72.     The Ulibarri Post-Petition Agreement provided that attorney time would be billed at $330.00 per hour, paralegal time would be billed at $180.00 an hour, and staff time would be billed at $75.00 per hour.

73.     The fees charged by Defendants pre-petition versus the fees charged by Defendants post-petition in the Ulibarri Case are not based on the actual time spent on the case pre-petition versus the time spent on the case post-petition.

74.     A portion of the fees charged by Defendants post-petition relate to work done for Ulibarri pre-petition.

75.     The Defendants filed the Ulibarri Case without accompanying schedules in order to allow for bifurcation of the attorney's fees.

76.     Pursuant to the terms of the Ulibarri Post-Petition Agreement, Ulibarri agreed to have twelve payments of $145.60 withdrawn from his bank account monthly on the 25th of each month.

77.     $145.60 x 12 does not equal $1,378.00.

78.     The payment of $1,378.00 referenced in the Ulibarri Post-Petition Fee Agreement did not include the court filing fee or a two-percent processing fee.

79.     The fees and charges in the Ulibarri Post-Petition Agreement are not clearly described and conspicuous.

80.     At the time Ulibarri signed the Ulibarri Post-Petition Agreement, Defendants were obligated to file the balance of Ulibarri's schedules and appear at his section 341 meeting of creditors.

81.     The reasonable value of the services offered by the Defendants under the Ulibarri Post-Petition Agreement was minimal.

Complaint - 8

82. The Defendants did not spend sufficient compensable time on the case after Ulibarri signed the Ulibarri Post-Petition Agreement to justify the fees charged based on the hourly rate outlined in the Ulibarri Post-Petition Agreement.

**B.2** **In re: Ross**

83. The Ross case was filed on January 9, 2020.

84. The balance of Ross's schedules was filed January 25, 2020.

85. The first section 341 meeting of creditors in the Ross case was held February 12, 2020.

86. Ross signed a chapter 7 post-petition fee agreement on February 12, 2020, (the "Ross Post-Petition Agreement"), which was the same day as the section 341 meeting and after the balance of her schedules was filed.

87. The Ross Post-Petition Agreement indicates that post-petition fees would be $1,378.00, "which includes the court filing fee;" however, debtor agreed to pay $145.60 for 12 months, for total payments of $1,747.20.

88. The Ross Post-Petition Agreement provided that attorney time would be billed at $330.00 per hour, paralegal time would be billed at $180.00 an hour, and staff time would be billed at $75.00 per hour.

89. It appears the Defendants did little or no compensable work for the benefit of Ross since the Ross Post-Petition Agreement was signed.

90. A portion of the fees charged by Defendants post-petition relate to work done for Ross pre-petition.

91. The fees charged by Defendants pre-petition versus the fees charged by Defendants post-petition in the Ross case are not based on the actual time spent on the case pre-petition versus the time spent on the case post-petition.

92. The Defendants filed the Ross Case without accompanying schedules in order to allow for bifurcation of the attorney's fees.

93. Pursuant to the terms of the Ross Post-Petition Agreement, April Ross agreed to have twelve payments of $145.60 withdrawn from her bank account monthly on the 20th of each month starting June 20, 2020.

Complaint - 9

94.     $145.60 x 12 does not equal $1,378.00.

95.     The payment of $1,378.00 referenced in the Ross Post-Petition Agreement did not include the remaining court filing fee or a two-percent processing fee.

96.     The Ross Post-Petition Agreement contains a payment schedule.

97.     The first payment is due under the payment schedule on June 6, 2020.

98.     Payments eight through twelve are listed as due before June 6, 2020, with due dates on January 20, 2020; February 20, 2020; March 20, 2020; April 20, 2020, and May 20, 2020; respectively.

99.     The fees and charges in the Ross Post-Petition Agreement are not clearly described and conspicuous.

100.    The Defendants had been working on Ross's case and providing post-petition bankruptcy assistance services for more than five days before Ross signed the Ross Post-Petition Agreement.

101.    Ross did not sign the Ross Post-Petition Agreement until more than five days after Defendants had filed her schedules.

102.    Ross did not sign the Ross Post-Petition Agreement until after Defendants had completed substantially all the work necessary to complete her bankruptcy case.

103.    Defendants were obligated to appear at Ross's section 341 meeting even if she did not sign the Ross Post-Petition Agreement.

104.    The reasonable value of services offered by the Defendants under the Ross Post-Petition Agreement at the time Ross signed the agreement was minimal.

105.    The Defendants did not spend sufficient compensable time on the case after Ross signed the Ross Post-Petition Agreement to justify the fees charged based on the hourly rate outlined in the Ross Post-Petition Agreement.

### B.3.     In re Atalig

106.    The Atalig case was filed on January 17, 2020.

107.    The balance of Atalig's schedules was filed on February 3, 2020.

Complaint - 10

108.  Atalig signed a chapter 7 post-petition fee agreement for post-petition representation in the "pending chapter 7 case" on February 6, 2020 (the "Atalig Post-Petition Agreement").

109.  The first Section 341 meeting of creditors in the Atalig Case was held on February 18, 2020.

110.  Atalig was represented by Rochelle Shuffield at the section 341 meeting.

111.  Ms. Shuffield is not a member or regular associate of Tom McAvity or NWDR.

112.  Ms. Shuffield was compensated for her appearance at the section 341 meeting.

113.  The compensation paid to Ms. Shuffield was not disclosed.

114.  The Atalig Post-Petition Agreement indicates that post-petition fees would be $1,378.00, "which includes the court filing fee;" however, debtor agreed to pay $145.60 for 12 months, for total payments of $1,747.20.

115.  The Atalig Post-Petition Agreement provided that attorney time would be billed at $330.00 per hour, paralegal time would be billed at $180.00 an hour, and staff time would be billed at $75.00 per hour.

116.  Defendants have not done $1,747.00 in billable work to the benefit of Atalig since the Atalig Post-Petition Agreement was signed.

117.  A portion of the fees charged by Defendants post-petition relate to work done for Atalig pre-petition.

118.  The fees charged by Defendants pre-petition versus the fees charged by Defendants post-petition in Atalig's case are not based on the actual time spent on the case pre-petition versus the time spent on the case post-petition.

119.  The Defendants filed the Atalig Case without accompanying schedules in order to allow for bifurcation of the attorney's fees.

120.  $145.60 x 12 does not equal $1,378.00.

121.  The payment of $1,378.00 referenced in the Atalig Post-Petition Agreement did not include the remaining court filing fee or a two-percent processing fee.

122.  The fees and charges in the Atalig Pre-Petition Agreement and Atalig Post-Petition Agreement are not clearly described and conspicuous.

Complaint - 11

123.    Atalig did not sign the Atalig Post-Petition Agreement until after Defendants had filed his schedules and completed substantially all the work necessary to complete his bankruptcy case.

124.    The Defendants had been working on Atalig's case and providing post-petition bankruptcy assistance services for more five days before Atalig signed the Atalig Post-Petition Agreement.

125.    Defendants were obligated to appear at Atalig's section 341 meeting whether or not Atalig signed the Atalig Post-Petition Agreement.

126.    The reasonable value of the services offered by the Defendants under the Atalig Post-Petition Agreement at the time he signed the agreement was minimal.

127.    The Defendants did not spend sufficient compensable time on the case after Atalig signed the Atalig Post-Petition Agreement to justify the fees charged based on the hourly rate outlined in the Atalig Post-Petition Agreement.

**B.4.    In re Carey**

128.    The Carey case was filed on December 27, 2019.

129.    The balance of Carey's schedules was filed on January 20, 2020.

130.    The first Section 341 meeting of creditors in the Carey Case was held on January 28, 2020.

131.    Carey was represented by Rochelle Shuffield at the section 341 meeting.

132.    Ms. Shuffield is not a member or regular associate of Tom McAvity or NWDR.

133.    Ms. Shuffield was compensated for her appearance at the section 341 meeting.

134.    The compensation paid to Ms. Shuffield was not disclosed.

135.    Carey testified at the 341 meeting that her schedules included errors, including the fact that her Schedule I identified no income.

136.    Based on Carey's testimony at the section 341 meeting, she had been working as a hospice nurse for the last five years.

137.    On February 4, 2020, after the filing of the deficiency documents, and after the first meeting of creditors, Carey signed a chapter 7 post-petition fee agreement wherein she agreed to

Complaint - 12

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA  98101-1271
206-553-2000, 206-553-2566 (fax)

pay an additional $1,680.00 for post-petition representation in the "pending chapter 7 case" (the "Carey Post-Petition Agreement").

138.    The Carey Post-Petition Agreement provided that attorney time would be billed at $330.00 per hour, paralegal time would be billed at $180.00 an hour, and staff time would be billed at $75.00 per hour.

139.    It appears the Defendants did little or no compensable work for the benefit of Carey since the Carey Post-Petition Agreement was signed.

140.    As of the date of this Complaint, Defendants have not filed amended schedules on behalf of Carey despite agreeing to do so in the Carey Post-Petition Agreement.

141.    A portion of the fees charged by Defendants post-petition relate to work done for Carey pre-petition.

142.    The fees charged by Defendants pre-petition versus the fees charged by Defendants post-petition in the Carey Case are not based on the actual time spent on the case pre-petition versus the time spent on the case post-petition.

143.    At the section 341 meeting, Carey was unable to identify an emergency that necessitated the filing of the petition without accompanying schedules.

144.    The Defendants filed the Carey Case without accompanying schedules in order to allow for bifurcation of the attorney's fees.

145.    The Carey Post-Petition Agreement contains the following language: "Client agrees to an attorney fee of $1680.00 ($142.80 x 12) which includes a 2% processing fee, the remaining filing fee and credit report fee."

146.    $142.80 x 12 equals $1,713.60.

147.    Carey did not sign the Carey Post-Petition Agreement until more than five days after the filing of her schedules and more than five days after she attended her section 341 meeting.

148.    The Defendants had been working on the Carey's case and providing post-petition bankruptcy assistance services for more five days before Carey signed the Carey Post-Petition Agreement.

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

149.    Defendants have not filed the amendments requested by the chapter 7 trustee at Carey's section 341 meeting.

150.    The Defendants did not spend sufficient compensable time on the Carey Case after she signed the Carey Post-Petition Agreement to justify the fees Defendants charged Carey based on the hourly rate provided for in the Carey Post-Petition Agreement.

151.    The reasonable value of the services offered by the Defendants under the Carey Post-Petition Agreement at the time she signed the agreement was minimal.

**B.5.    In re: Zimmerman**

152.    The Zimmerman case was filed on January 10, 2020.

153.    The balance of the schedules in the Zimmerman Case was filed January 24, 2020.

154.    The Section 341 meeting of creditors in the Zimmerman Case was held February 13, 2020.

155.    Misty Zimmerman signed a chapter 7 post-petition fee agreement for post-petition representation in the "pending chapter 7 case" on April 14, 2020 (the "Zimmerman Post-Petition Agreement").

156.    Jeffrey Zimmerman did not sign the Zimmerman Post-Petition Agreement.

157.    A portion of the fees charged by Defendants post-petition relate to work done for the Zimmermans pre-petition.

158.    The fees charged by Defendants pre-petition versus the fees charged by Defendants post-petition in the Zimmerman Case are not based on the actual time spent on the case pre-petition versus the time spent on the case post-petition.

159.    It appears the Defendants did little or no compensable work for the benefit of the Zimmermans since the Zimmerman Post-Petition Agreement was signed.

160.    The Defendants filed the Zimmerman Case without accompanying schedules in order to allow for bifurcation of the attorney's fees.

161.    Pursuant to the terms of the Zimmerman Post-Petition Agreement, Misty Zimmerman agreed to pay "an attorney fee of $2024 ($172.04 x 12) which includes a 2% processing fee, the remaining filing fee and credit report fee."

Complaint - 14

162.    $172.04 x 12 does not equal $2,024.00.

163.    The two percent processing fee was added to the fee of $2,024.00.

164.    The Zimmerman Post-Petition Agreement provided that attorney time would be billed at $330.00 per hour, paralegal time would be billed at $180.00 an hour, and staff time would be billed at $75.00 per hour.

165.    The fees and charges in the Zimmerman Post-Petition Agreement are not clearly described and conspicuous.

166.    Misty Zimmerman did not sign the Zimmerman Post-Petition Agreement until after Defendants had filed debtors' schedules and completed all the work necessary to complete the case.

167.    Misty Zimmerman signed the Post-Petition Agreement after the section 341 meeting had already been completed.

168.    The Defendants had been working on the Zimmermans' case and providing post-petition bankruptcy assistance services for more five days before Ms. Zimmerman signed the Zimmerman Post-Petition Agreement.

169.    The reasonable value of the services offered by the Defendants under the Zimmerman Post-Petition Agreement was minimal.

170.    The Defendants did not spend sufficient compensable time on the case after Misty Zimmerman signed the Zimmerman Post-Petition Agreement to justify the fees charged based on the hourly rate outlined in the Zimmerman Post-Petition Agreement.

171.    The debtors in the Cases were not adequately advised that regardless of whether they executed a post-petition fee agreement, Defendants would still be obligated to perform services such as filing amendments and attending the Section 341 Meeting of Creditors.

172.    Pursuant to 11 U.S.C. § 329, the Court should order cancellation of the agreements with NWDR and return of all fees paid to Defendants.

C.  The RULE 2016(B) STATEMENTS

    C.1.    In re Carey

173.    McAvity executed the Carey Rule 2016(b) Statement on or about January 15, 2020.

Complaint - 15

174.	McAvity certified in the Carey Rule 2016(b) Statement that he had accepted $400.00 for legal services prior to filing and that he was to be paid an additional $1,745.00 post-petition.

175.	Carey did not execute the Carey Post-Petition Agreement until February 4, 2020.

176.	At the time McAvity signed the Rule 2016(b) Statement and filed it with the Court, he was not entitled to receive any additional compensation in the Carey Case.

177.	McAvity certified in the Carey Rule 2016(b) Statement that he had not agreed to share any of the compensation he received from Carey.

178.	McAvity shared a portion of the compensation in the Carey Case with Rochelle Shuffield who attended the 341 meeting of creditors with Carey.

### C.2.	In re Ross

179.	McAvity executed the Ross Rule 2016(b) Statement on or about January 24, 2020.

180.	McAvity certified in the Ross Rule 2016(b) Statement that he had accepted $367.00 for legal services prior to filing.

181.	McAvity certified in the Ross Rule 2016(b) Statement that he was to be paid an additional $1,378.00 post-petition.

182.	Ross did not sign the Ross Post-Petition Agreement until February 12, 2020.

183.	At the time McAvity signed the Rule 2016(b) Statement and filed it with the Court, he was not entitled to receive any additional compensation in the Ross Case.

### C.3.	In re Atalig

184.	McAvity executed the Atalig Rule 2016(b) Statement on February 3, 2020.

185.	McAvity certified in the Atalig Rule 2016(b) Statement that he had accepted $367.00 for legal services prior to filing.

186.	McAvity certified in the Atalig Rule 2016(b) Statement that he was to be paid an additional $1,378.00 post-petition.

187.	Atalig did not sign the Atalig Post-Petition Agreement until February 6, 2020.

188.	At the time McAvity signed the Atalig Rule 2016(b) Statement and filed it with the Court, he was not entitled to receive any additional compensation in the Atalig Case.

Complaint - 16

189.  McAvity certified in the Atalig Rule 2016(b) Statement that he had not agreed to share any of the compensation he received from Atalig.

190.  McAvity shared a portion of the compensation in the Atalig Case with Rochelle Shuffield who attended the 341 meeting of creditors with Atalig.

### C.4.  In re Zimmerman

191.  McAvity executed the Zimmerman Rule 2016(b) Statement on January 23, 2020.

192.  At the time McAvity signed the Zimmerman Rule 2016(b) Statement the Zimmermans had not signed a chapter 7 fee agreement.

193.  Misty Zimmerman did not sign the Zimmerman Post-Petition Agreement until April 14, 2020.

194.  At the time McAvity Signed the Zimmerman Rule 2016(b) Statement he was not entitled to receive any additional compensation in the Zimmerman case.

### D.  THE WEBSITES

195.  NWDR and/or McAvity maintain the Website www.seattle-bankruptcyattorney.net (the "**Seattle Website**"), which advertises Bankruptcy Assistance  to Assisted Persons and potential Assisted Persons.

196.  As of May 11, 2020, and at all relevant times, the Seattle Website did not provide a clear and conspicuous statement similar to that required by 11 U.S.C. § 528(a)(4).

197.  The Seattle Website links to a page at https://www.seattle-bankruptcyattorney.net/pay-post-file-attorney-fees-after-filing, which describes the Defendants' post-petition fee structure (the "Seattle Fee Structure Page").

198.  The Seattle Fee Structure Page advises Assisted Persons and potential Assisted Persons that they can make payments on the post-filing attorney fees in easy monthly installments.

199.  As of May 11, 2020, and at all relevant times, the Seattle Fee Structure Page did not disclose the potentially dischargeable nature of post-petition attorney's fees.

200.  As of May 11, 2020, and at all relevant times, the Seattle Fee Structure Page did not disclose that an attorney is prohibited from withdrawing as counsel without first seeking court authorization regardless of whether an Assisted Person executes a post-petition fee agreement.

Complaint - 17

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA  98101-1271
206-553-2000, 206-553-2566 (fax)

201.    McAvity    and/or    NWDR    maintain    the    website    https://www.vancouver-bankruptcyattorney.net (the "Vancouver Website"), which advertises Bankruptcy Assistance to Assisted Persons and potential Assisted Persons.

202.    As of May 11, 2020, and at all relevant times, the Vancouver Website did not provide a clear and conspicuous statement similar to that required by 11 U.S.C. § 528(a)(4).

203.    The    Vancouver    Website    links    to    a    page    at    https://www.vancouver-bankruptcyattorney.net/pay-post-file-attorney-fees-after-filing, which describes the Defendants' post-petition fee structure (the "Vancouver Fee Structure Page").

204.    The Vancouver Fee Structure Page advises Assisted Persons and Potential Assisted Persons that they can make payments on the post-filing attorney fees in easy monthly installments.

205.    The Vancouver Fee Structure Page did not disclose the potentially dischargeable nature of post-petition attorney's fees.

206.    The Vancouver Fee Structure Page did not disclose that an attorney is prohibited from withdrawing as counsel without first seeking Court authorization regardless of whether an Assisted Person executes the post-petition agreement.

207.    McAvity and/or NWDR maintain the website www.tommcavity.com (the "**McAvity Website**"), which advertises Bankruptcy Assistance to Assisted Persons and potential Assisted Persons.

208.    As of May 11, 2020, and at all relevant times, the McAvity Website did not provide a clear and conspicuous statement similar to that required by 11 U.S.C. § 528(a)(4).

209.    McAvity and/or NWDR maintain the website www.nwdrlf.com (the "**NWDR Website**"), which advertises Bankruptcy Assistance to Assisted Persons and potential Assisted Persons.

210.    Through the NWDR Website an Assisted Person or potential Assisted Person can access a link by clicking "Our Easy Payment Plan," which gives rise to two additional pages. The first page located at https://nwdrlf.com/bankruptcy-attorney-fee-payment-plan/bringing-law-office-2 details the firms post-petition payment options ("NWDR Post-Petition Payment Page"). The

Office of the United States Trustee
700 Stewart Street, Suite 5043
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

second link, https://nwdrlf.com/bankruptcy-attorney-fee-payment-plan/affordable-bankruptcy-filing-fees, is titled "Affordable Bankruptcy Filing Fees" ("NWDR Affordable Filing Fees Page").

211.     Neither the NWDR Post-Petition Payment Page nor the NWDR Affordable Filing Fee Page disclose to Assisted Persons or Potential Assisted Persons the Defendants' obligation continue representing an Assisted Person post-petition in the event the client decides not to execute a post-petition fee agreement.

212.     McAvity is aware, and has been aware at all relevant times, that if he files a case for an Assisted Person, absent a court order, he and NWDR are required to continue representing that Assisted Person post-petition regardless of whether the Assisted Person signs a post-petition fee agreement.

213.     McAvity is aware, and has been aware at all relevant times, that if he moved to withdraw from a case because an Assisted Person did not sign a post-petition fee agreement that it is unlikely a court would sign such an order.

214.     Assisted Persons and potential Assisted Persons who visit the above websites maintained by the Defendants are being misled regarding their obligation to pay attorney's fees post-petition, insofar as the websites do not disclose that Defendants are required to represent an Assisted Person post-petition regardless of whether the Assisted Person pays any post-petition fees or signs a post-petition fee agreement.

215.     McAvity maintains and controls several websites that advertise his services for bankruptcy, including the Seattle Website, the Vancouver Website, the McAvity Website and the NWDR Website (the "Websites").

216.     The Websites are advertisements within the meaning of 11 U.S.C. § 528(a)(4).

217.     McAvity is a Debt Relief Agency.

218.     NWDR is a Debt Relief Agency.

219.     Each of the debtors in the Cases are Assisted Persons as that term is defined by 11 U.S.C. § 101(3).

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

220.    Defendants, through the Seattle Website, Vancouver Website and NWDR Website misrepresented the services that Defendants were required to provide regardless of whether any of the debtors in the Cases signed a post-petition fee agreement.

221.    Defendants misrepresented, through the Pre-Petition Agreement and the applicable Post-Petition Fee Agreements provided to the above-named debtors, the services that Defendants were required to provide regardless of whether any of the debtors in the Cases signed a Post-Petition Fee Agreement.

222.    McAvity controls the content on the Seattle Website, Vancouver Website and the NWDR Website.

223.    Defendants misrepresented, through use of the applicable Post-Petition Fee Agreements, the value and necessity of the additional services offered in the applicable Post-Petition Fee Agreement insomuch as the additional services that Defendants were not already obligated to provide would not be required by the majority of debtors.

224.    Defendants' use of the Websites, Pre-Petition Agreements, and applicable Post-Petition Fee Agreements reflects a clear and consistent pattern of failing to disclose, or misrepresenting by material omission, the services Defendants are compelled to provide to Assisted Persons under applicable local rules, and the value and necessity of the additional services offered by Defendants under the Post-Petition Fee Agreements.

**E.  THE 341 TESTIMONY**

225.    In each of the Cases, the chapter 7 trustee inquired at the first Section 341 meeting of creditors whether the debtor had been informed that any unpaid portion of their attorney's fees was subject to discharge.  Except for Atalig, each debtor testified they were unaware of that fact.

226.    Debtor Ulibarri testified that he was not told he was not obligated to pay the remaining $1,378.00, or that Defendants would still be obligated to represent him if he did not pay the money.

227.    Debtor Ross testified at the section 341 meeting that she still owed $1,378.00 to the Defendants.

Complaint - 20

228.　Debtor Ross testified at the section 341 meeting that she was not told by the Defendants that she was not obligated to pay $1,378.00 to the Defendants.

229.　Debtor Ross testified at the section 341 meeting that she was not told by the Defendants that they were still required to represent her regardless of whether she paid them any additional funds.

230.　Debtor Carey testified at he section 341 meeting that she believed she had provided Defendants with all the information necessary to file her case when she signed her petition.

231.　Debtor Carey testified at the section 341 meeting that she did not know Defendants were going to file the petition and schedules separately.

232.　Debtor Cary testified at the section 341 meeting that there was no reason to hurry to file her case such a repossession or garnishment.

233.　Debtor Cary testified at the section 341 meeting that the Defendants did not advise her that she was under no obligation to pay the remainder of the attorney's fees.

234.　Debtors, the Zimmermans, testified at the section 341 meeting that the Defendants did not tell them that the Defendants would still be obligated to finish the case regardless of whether the Zimmermans paid any additional funds to the Defendants.

## F.  **BACKGROUND FACTS**

235.　The term "Assisted Person" shall have the definition prescribed by 11 U.S.C. § 101(3).

236.　The term "Bankruptcy Assistance" shall have the definition prescribed by 11 U.S.C. § 101(4A).

237.　The term "Debtor Relief Agency" shall have the definition prescribed by 11 U.S.C. § 101(12A).

238.　In each of the Cases, McAvity signed the petition, which contains a certification that, "[i]n a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect."

239.　Section 707(b)(4)(D) applies to the Cases.

Complaint - 21

240.   Based on information and belief, some or all of the accounts receivable generated by the post-petition attorney fee agreements in the Cases were sold by Defendants to either a collection agency or factoring company.

241.   Based on information and belief, Defendants offer a discount on their attorney's fees if the debtor pays all the attorney's fees prior to filing.

242.   Based on information and belief, debtors are charged more attorney's fees by Defendants in cases where the accounts will be factored or sold to a collection company even though no additional legal work is required on those cases.

## IV. FIRST CLAIM FOR RELIEF
### 11 U.S.C. §§ 329(b); 526(a)(1)(2)&(3); 528(a)&(b); 707(b)(4)(C); and Federal Rule of Bankruptcy Procedure 2016(b)
### (Avoidance and Cancellation of Agreements and Disgorgement of Fees)

256.   The above paragraphs are hereby incorporated by reference.

257.   McAvity is a Debt Relief Agency.

258.   Each of the debtors in the Cases are Assisted Persons.

259.   As set forth above, Defendants have violated Section 526, 528 and Rule 2016(b) by:

   a.  Failing to perform all services that Defendants informed the assisted persons that they would provide in connection with a bankruptcy case;

   b.  Making statements in the 2016(b) declarations that were untrue and misleading;

   c.  Signing 2016(b) declarations that Defendants know to be not well grounded in fact;

   d.  Failing to disclose in the 2016(b) statement that Defendants had agreed to share compensation;

   e.  Charging unreasonable fees;

   f.  Misrepresenting the amount of their fees;

   g.  Charging for unreasonable expenses;

   h.  Failing to disclose all expenses;

   i.  Charging for fees and expenses that are not support by actual time and costs;

Complaint - 22

j. Misrepresenting the services Defendants are required to provide and the benefits and risks of filing;

k. Failing to execute written contracts with the debtors for service within five days of providing bankruptcy assistance services that clearly and conspicuously describe the service to be provided and the fees to be charged;

l. Failing to provide clear and conspicuous written payment terms to the debtors that explain the fees and charges for the services offered;

m. Failing to clearly & conspicuously explain fees and charges for service;

n. Maintaining false and misleading websites; and

o. Maintaining websites that fail to clearly and conspicuously state "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code" or similar language.

260. Based on the above, each of the Pre-Petition Agreements and Post-Petition Agreement should be avoided and cancelled pursuant to 11 U.S.C. §526 (c)(1).

261. Based on the above, all fees paid in the Cases to Defendants should be disgorged back to Debtors pursuant to 11 U.S.C. §329.

## V.  SECOND CLAIM FOR RELIEF
### Request for Injunctive Relief Under
### the Court's Inherent Authority and 11 U.S.C. §526(c)(5)

262. The above paragraphs are incorporated by reference.

263. The Court has inherent authority to regulate the practice of attorneys who appear before it.

264. Under 11 U.S.C. §526(c)(5) the court may enjoin any violations of the restrictions placed on Debt Relief Agencies.

265. Defendants regularly file a high volume of cases in bankruptcy court.

266. The Defendants' use of the Websites, Pre-Petition Agreements, and the applicable Post-Petition Fee Agreements misled debtors regarding their rights, their obligations to pay fees post-petition, and the amount of fees being charged.

Complaint - 23

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

267.     The Court should issue an injunction against Defendants prohibiting them from engaging in these and any further practices that violate 11 U.S.C. §§707(b)(4)(C), 329, 526, 528 or Fed. R. Bankr P. 2016 and 2017.

## VI.     THIRD CLAIM FOR RELIEF
### Sanctions and Civil Penalties
### Under 11 U.S.C. §§ 105(a) and § 526(c)(5)

268.     The above paragraphs are incorporated by reference.

269.     The Court has express authority under 11 U.S.C. § 105(a) to sanction attorneys as necessary or appropriate to carry out the provisions of title 11.

270.     McAvity has been in practice for approximately twenty years.

271.     The requirements of provisions 11 U.S.C. §§ 329, 526, 528, and 707(b)(4)(C), and Federal Rule of Bankruptcy Procedure 2016 are explicit, and given McAvity's time in practice, should be understood by the Defendants.

272.     Defendants' conduct in the Cases indicates a clear and consistent pattern of conduct that is either intentional or indifferent to the requirements of the Bankruptcy Code and Rules, the interests of their clients, and their duty of candor to the Court.

273.     The Court should impose appropriate civil penalties against Defendants pursuant to § 526(c)(5) for each case in which they have failed to clearly and conspicuously disclose their fees or improperly bifurcated their fees using their two fee agreement system.

274.     The Court should sanction Defendants as appropriate under the Court's authority under §105 for each case in which they have failed to clearly and conspicuously disclose their fees or improperly bifurcated their fees using their two fee agreement system.

## VII.     PRAYER FOR RELIEF

WHEREFORE, based on 11 U.S.C. §§ 105, 329, 526, 528 and 707(b)(4), Federal Rules of Bankruptcy Procedure 2016 and 2017, and the inherent authority of the Court, the United States Trustee requests entry of a judgment:

A.     Declaring Defendants' agreements with the debtors in the Cases are avoided, cancelled and are unenforceable;

Complaint - 24

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

1

B.    Requiring Defendants to disgorge to the debtors all fees received in the Cases;

2

C.    Requiring Defendants to place the proper disclosures on their advertising

3
material; including, but not limited to, their websites;

4

D.    Enjoining Defendants' conduct in future chapter 7 cases against violations of the

5
statutes and rules cited herein;

6

E.    Imposing an appropriate civil penalty pursuant to 11 U.S.C. § 526(c)(5);

7

F.    Sanction Defendants as appropriate under the Court's authority under 11 U.S.C.

8
§105;

9

G.    Barring Defendants from filing any additional bankruptcy cases for ninety days;

10
and

11

H.    Any such other relief as the Court deems appropriate.

12

Dated: June 8th, 2020

13

Respectfully submitted,

14

15

Gregory M. Garvin
Acting U.S. Trustee for Region 18

16

17

By:    /s/ Matthew J.P. Johnson

18

Matthew J.P. Johnson, WSBA #40476
Attorney for United States Trustee

19

20

21

22

23

24

25

26

Complaint - 25